**FLEET BANK, NATIONAL ASSOCIATION**

v.

**The Honorable John P. BURKE, Banking Commissioner of the State of Connecticut, the Connecticut Department of Banking.**

**No. 3:97CV133 (JBA).**

United States District Court, D. Connecticut.

Aug. 11, 1997.

Daniel L. Fitzmaurice, Day, Berry & Howard, Hartford, CT, for Plaintiff.

William J. Prensky, Attorney General's Office, Finance & Public Utilities, Hartford, CT, John G. Haines, Attorney General's Office, Hartford, CT, for Defendants.

### RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 8]

ARTERTON, District Judge.

Resolution of defendants' Motion to Dismiss requires the court to address the interplay between the doctrine of *Pullman* abstention and that of federal preemption. This action for injunctive and declaratory relief arises from the defendant Connecticut Banking Commissioner's interpretation of the state statutes governing the establishment and regulation of automatic teller machines ("ATMs"), Conn. Gen.Stat. § 36a–155—36a–159. Although the state statutes are silent on the subject of ATM fees to non-depositor customers, the defendant Banking Commissioner has construed § 36a–156 as not permitting a bank to charge a direct transaction fee to such ATM users. In this suit, plaintiff Fleet Bank, National Association ("Fleet") seeks a declaratory judgment that the Connecticut ATM statutes do not prohibit Fleet from charging fees to non-depositor customers using their ATM's, and that the National Bank Act, 12 U.S.C. § 24 (Seventh), authorizes such a transaction fee or "surcharge," thus preempting the Connecticut ATM statutes. Fleet seeks to enjoin defendants from acting in any way to prevent, impede, or interfere with Fleet's charging fees to non-depositor customers using its ATMs.

The defendants move to dismiss, invoking the abstention doctrine articulated in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), contending that because the Connecticut ATM statutes have not yet been construed by any court, this court must abstain from consideration of this issue and permit it to be determined by Connecticut state courts in the first instance.

At issue in *Pullman* was an order of the Texas Railroad Commission which provided that no sleeping car could be operated on any railroad in Texas unless the car was continuously in the charge of a Pullman conductor. Prior to the order, trains having only one sleeping car were in the charge of a porter, while trains having two or more sleepers were in the charge of a Pullman conductor. Pullman porters were black and Pullman conductors were white. *Id.* 312 U.S. at 497–98. The Pullman Company and the railroads challenged the Commission's order as unauthorized by Texas law, as well as violative of the Equal Protection, the Due Process and the Commerce Clauses of the United States Constitution. The intervening porters adopted these claims, but principally objected to the order as discriminating against them on the basis of their race, in violation of the Fourteenth Amendment. *Id.* at 498. The Supreme Court reasoned that although the complaint of the Pullman porters raised a substantial constitutional issue, "[s]uch constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy," i.e. if the Commission's order was invalidated. *Id.* The Commission had grounded its order on a Texas statute that conferred authority on the Railroad Commission to adopt necessary regulations "to correct abuses and prevent unjust discrimination in the rates, charges and tolls of the railroads, persons, associations and corporations." *Id.* at 499. The Court found that whether arrangements pertaining to the staffs of Pullman cars are covered by the Texas statute's concept of "discrimination" was unclear, as was the question of what practices of the railroads may be deemed to be "abuses" subject to the Commission's correction. *Id.* Noting that it is appropriate for federal courts to exercise "wise discretion" in restraining their authority because of "scrupulous regard for the rightful independence of the state governments" and for the smooth working of the federal judiciary, *Pullman* concluded that the law of Texas furnished an easy and ample means for determining the Commission's authority, and that the "last word on the statutory authority of the Railroad Commission in this case, belongs neither to us nor to the district court but to the supreme court of Texas." *Id.* at 500–01. Thus, under the *Pullman* doctrine federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided, thereby avoiding both unnecessary adjudication of federal questions and needless friction with state

policies. *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). "However, federal courts need not abstain on Pullman grounds when a state statute is not 'fairly subject to an interpretation which will render unnecessary' adjudication of the federal constitutional question." *Id.* (citation omitted). "Thus, Pullman abstention is appropriate only when a state law is susceptible to an interpretation that will make it unnecessary to decide the federal constitutional question." *See also United Fence & Guard Rail Corp. v. Cuomo,* 878 F.2d 588, 594 (2d Cir.1989).

■ The Second Circuit has urged hesitancy in invoking the *Pullman* doctrine in that the doctrines of abstention are extraordinary and narrow exceptions to the unflagging duty of district courts to adjudicate controversies properly within federal jurisdiction. *United Fence & Guard Rail,* 878 F.2d at 593. *See also Williams v. Lambert,* 46 F.3d 1275, 1281 (2d Cir.1995) (holding that, as a policy matter, district courts should abstain from hearing cases only under very unusual or exceptional circumstances). Three criteria must be established in order to justify abstention on *Pullman* grounds: (1) an unclear state statute or uncertain state law issue; (2) determination of the federal issue must depend upon the interpretation given to the ambiguous state provision; and (3) the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue. *United Fence & Guard Rail,* 878 F.2d at 594.

■ Defendants contend, and plaintiff disputes, that should a Connecticut state court decide that the fees at issue are permissible under the Connecticut ATM statutes, there will be no need to reach whether the Connecticut statutes are preempted by the National Bank Act, and thus the state statutes would be "susceptible to an interpretation that would avoid the federal constitutional issue." (Defs.' Mem. at 13). Although the Second Circuit has held that concerns for maintaining federal respect for state law and policy are not implicated when Supremacy Clause questions are presented because such questions are essentially ones of federal policy, and therefore, abstention is not appropri-

ately invoked in a preemption case, see *In re Pan American Corp.,* 950 F.2d 839, 847 (2d Cir.1991), the defendants maintain that this principle has been "effectively overruled" by the Supreme Court in *New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*"NOPSI"*). The court disagrees that *NOPSI* should be read so broadly.

In *NOPSI,* the courts below found abstention proper on the basis of both *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Supreme Court, however, held that abstention was inappropriate because the proceeding at issue, the New Orleans City Council proceeding was not "judicial in nature," but "plainly legislative." *NOPSI,* 491 U.S. at 370–71. *NOPSI* confirmed that federal jurisdiction is not compelled solely by the assertion of a substantial claim that the challenged state action is completely preempted by federal law but assumed without deciding that a facially conclusive preemption claim could be sufficient to render abstention inappropriate. *NOPSI* at 367. Because plaintiff's preemption claim is not facially conclusive, defendants urge that *NOPSI*'s reasoning should be applied to *Pullman* abstention doctrine. However, the rationale of *NOPSI,* in holding that a claim of federal preemption is not sufficient to retain jurisdiction where *Younger* would otherwise require abstention, has no application where no parallel on-going state proceeding exists in which the preemption issue can be raised. Relegating plaintiff's preemption claim to state determination would thus be futile. Further, it would also be potentially futile to abstain to await the state supreme court's interpretation of a state statute which may in fact prove to be preempted by federal law and therefore unenforceable. *See also* 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4242, at 34 (2d ed.1988).

Plaintiff claims that the National Bank Act, 12 U.S.C. § 24 (Seventh), preempts the Connecticut ATM statutes. That section provides in pertinent part:

Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power—

**Seventh.** To exercise by its board of directors or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, and bullion; by loaning money on personal security; and by obtaining, issuing and circulating notes according to the provisions of title 62 of the Revised Statutes.

■ "Whenever the federal government has the authority to regulate a given area, Congress may exercise that power so as to preclude states from asserting authority over the same subject matter." *Association of Int'l Auto. Mfrs., Inc. v. Abrams,* 84 F.3d 602, 607 (2d Cir.1996). The Supremacy Clause, U.S. Const., art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law. *Id.* While express preemption occurs where a federal statute expressly directs that state law be ousted to some degree from a certain field, even when there is no express statutory statement, there may be implied preemption. *Id.* A federal statute implicitly overrides state law when either the scope of the statute indicates that Congress intended federal law to occupy a field exclusively, or when state law is in actual conflict with federal law. *Id.* Further, implied conflict preemption may be found where it is impossible for a private party to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* Here, if § 24 (Seventh) of the National Bank Act is ultimately found either to occupy the field exclusively, or to conflict actually or implicitly with the Connecticut ATM statutes, then the National Bank Act will preempt state law, regardless of any state court interpretation of those statutes. In short, interpretation of the Connecticut ATM statutes by a Connecticut court in the first instance will not resolve the preemption question in this case.

■ Finally, the gravamen of defendants' claim is that the issue of the propriety of charging ATM fees directly to non-depositors under the Connecticut ATM statutes is untested and has never been addressed by the Connecticut courts. However, the first prong of the *Pullman* doctrine—that the state statute be unclear or uncertain—is not synonymous with the fact that a state statute has not yet been interpreted. *Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus,* 60 F.3d 122, 126 (2d Cir.1995) (citing *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)) (state law is not rendered unclear merely because no state court has yet construed it). Defendants here have not demonstrated a lack of statutory clarity that would compel the court to abstain. *See United Fence & Guard Rail,* 878 F.2d at 595 (mere complexity of a state law issue is insufficient reason to invoke the *Pullman* doctrine).

There is little, if any, discretion to abstain in a case which does not meet the requirements of a particular abstention principle. *Steinhaus,* 60 F.3d at 126. Therefore, because defendants do not make a sufficient showing that the state ATM statutes are unclear, and plaintiff's preemption claim does not present a federal constitutional issue which would be avoided by allowing the state courts to resolve any unsettled state law question regarding the Connecticut ATM statutes, the court concludes that abstention is not required under the *Pullman* doctrine.

Accordingly, defendant's Motion to Dismiss [doc. # 8] is DENIED.

IT IS SO ORDERED.