**WINNEBAGO TRIBE OF NEBRASKA; Sac and Fox Nation of Missouri in Kansas and Nebraska; Iowa Tribe of Kansas and Nebraska Kickapoo Tribe of Indians of the Kickapoo Reservation in Kansas; HCI Distribution; John Blackhawk, Chairman of the Winnebago Tribe of Nebraska; Lance Morgan; Erin Morgan; and Earlene Hradec, Plaintiffs,**

v.

**Phill KLINE, Attorney General for the State of Kansas; Carla Stovall, former Attorney General for the State of Kansas; Joan Wagnon, Secretary of the Kansas Department of Revenue; Stephen Richards, former Secretary of**

the Kansas Department of Revenue; Steven Maxwell, Assistant Attorney General for the State of Kansas; Jeffrey Lochow, Director of Tax Operations; Jeffrey D. Scott, Designee of the Director of Taxation, Kansas Director of Revenue, Defendants.

No. 02–4070–JTM.

United States District Court, D. Kansas.

Jan. 15, 2004.

See also 341 F.3d 1202.

Evelyn Z. Wilson, Thomas E. Wright, Wright, Henson, Clark & Baker LLP, Topeka, KS, Mary Johanna Streitz, Vernle C. Durocher, Jr., Dorsey & Whitney, LLP, Minneapolis, MN, Thomas Weathers, Alexander, Berkey, Williams & Weathers LLP, Berkeley, CA, Mark S. Gunnison, Payne & Jones, Chtd., Overland Park, KS, for Plaintiffs.

Brian R. Johnson, The Law Offices of John M. Knox, Chartered, Lawrence, KS, Jay Douglas Befort, John Michael Hale, Joseph Brian Cox, Kansas Department of Revenue, Topeka, KS, for Defendants.

## *MEMORANDUM AND ORDER*

MARTEN, District Judge.

The plaintiffs are Indian Tribes and their agents who seek to stop the State of Kansas from collecting fuel taxes from businesses they operate. The state has attempted to impose these taxes pursuant to KSA 79–3401 *et seq.*, which imposes a tax on the use or the sale and delivery of motor vehicle fuel.

On May 17, 2002, Judge Saffels entered a temporary restraining order requiring

the defendants to stop enforcement of the statute against plaintiffs. After the action was transferred to the undersigned, the court granted plaintiffs a preliminary injunction granting similar relief, and also requiring defendants to return property seized from plaintiffs. Following an appeal, this decision was affirmed by the Tenth Circuit. *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202 (10th Cir. 2003).

This matter is before the court on several motions. The defendants have filed two separate motions to dismiss—one by the group of defendants representing state revenue agencies (defendants Steven Richards, Jeff Lochow and Jeff Scott; Dkt. No. 52), and one the group of defendants representing the Attorney General's office (Dkt. No. 70). In addition, the plaintiffs have moved for leave to amend their complaint. (Dkt. No. 114).[1]

## A. Factual Background

Under the Kansas statutory scheme, the legal incidence of the state's fuel tax falls on the "distributor of first receipt" of such fuel. KSA § 79–3408(c). *See Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 578 (10th Cir.2000) (holding that the legal incidence of the Kansas Fuel Tax falls on distributors, not retailers). The distributor must compute and remit the tax each month for the fuel received by the distributor in the State of Kansas. KSA § 79–3410

Plaintiff HCI is a corporation organized under the laws of the Winnebago Tribe. HCI is wholly-owned and operated by Ho–Chuck, Inc., which in turn is wholly-owned by the Winnebago Tribe. Ho–Chuck and its subsidiaries, including HCI, were organized by the Winnebago Tribe to conduct the Tribe's non-gaming economic development activities. The Winnebago Tribe, through HCI, makes motor fuels on its reservation and then sells the fuel to other Indian tribes for retail sales.

The Tribe first buys fuel from off-reservation pipeline stations in Nebraska and Iowa. The fuel is then transported to the Tribe's storage and blending facilities, which are located on the Winnebago Tribe's reservation near Emerson, Nebraska. Once the fuel is on the reservation, HCI blends an alcohol additive, a soy additive, or both into the gasoline. This blending process renders a fuel product with a higher octane rating.

On May 8, 2001, HCI applied for a Motor Vehicle Fuel and Special Fuel Importer/Exporter License and a Motor Vehicle and Special Fuel Distributor's License through the Kansas Department of Revenue. The Department of Revenue returned HCI's application for the Distributor License, telling HCI it needed only an Importer/Exporter License. The Department of Revenue issued HCI an Importer/Exporter License, effective May 4, 2001.

Plaintiffs Sac and Fox Nation of Missouri, Iowa Tribe of Kansas and Nebraska, and Kickapoo Tribe of Indians of the Kickapoo Reservation entered into contracts with the Winnebago Tribe through HCI for the purchase of fuel manufactured by HCI in August of 2001. According to the Winnebago Tribe, the fuel is sold to the Kansas Tribes on the Winnebago reservation. The fuel is then transported by a fuel tanker from the blending facility on the Winnebago reservation to the fuel de-

---

1. In light of the court's careful attention to the voluminous pleadings already on file, the filing of any motions to reconsider the court's order is discouraged. In the event any such motion is filed, it shall be submitted within ten days of the present order, and shall not exceed five pages in length. A Responsive by the opposing party may be submitted, subject to the same limitations. No Reply shall be filed.

pots located on the reservations of the various Kansas Tribes where it is then sold to retail customers.

On September 10, 2001, shortly after Winnebago Tribe began selling fuel to the Kansas Tribes, HCI received a letter from the Department of Revenue stating that HCI, as a licensed importer under the Act, was required to report and remit Kansas fuel taxes on deliveries of fuel to any retailer in the State of Kansas. HCI responded that it was a wholly-owned, tribally-chartered corporation enjoying all the privileges and immunities of the Winnebago Tribe, and, consequently, Kansas lacked any authority to tax.

On October 17, 2001, the Department of Revenue made a second demand to HCI for payment of the tax.

On April 8, 2002, the Department of Revenue, working in conjunction with the Kansas Attorney General's office, submitted an affidavit and application for seizure of HCI's property. On the following day, defendants seized without notice two trucks, two tanker trailers, fuel and fuel oil, two black permit books and shipping papers. At the same time, the Department of Revenue entered orders for a jeopardy assessment and issued tax warrants against HCI and the individual plaintiffs. The Attorney General also initiated criminal proceedings against plaintiffs HCI, Chairman Blackhawk, and Lance Morgan. Finally, the Attorney General's office proceeded with a criminal action against James Knox, an HCI employee who was driving a fuel tanker when it was seized. Mr. Knox is being prosecuted for unlawful delivery of fuel without a permit in violation of KSA §§ 79–3464e and 55–507.

On May 8, 2002, plaintiffs filed the present action in the United States District Court for the District of Kansas seeking injunctive and declaratory relief.[2] Plaintiffs' Complaint/proposed Amended Complaint raises the following nineteen causes of action:

1 The State of Kansas is without jurisdiction to impose Kansas motor fuel taxes on HCI for motor fuel sales made to the Kansas Tribes because HCI is not a "distributor" as defined by the Act. Only the Kansas Tribes can be considered distributors under the Act, thus creating a per se invalid tax against the Kansas Tribes pursuant to the Supremacy Clause of the United States Constitution.

2 Even if the Act can be construed to impose a tax on the Winnebago Tribe or HCI, the tax is per se invalid as a matter of federal law and imposition of such a tax would violate the Supremacy Clause in Article VI of the Constitution.

3 Even if the Act can be construed to impose a tax on the Winnebago Tribe or HCI, the tax is per se invalid as a matter of federal law and imposition of such a tax unlawfully interferes with commerce between and among federally recognized Indian tribal governments.

4 Even if the Act can be construed to impose a tax on the Winnebago Tribe or HCI, the federal and tribal interests against state taxation outweigh any legitimate interest of Kansas in imposing the taxes, and therefore the taxes are invalid as a matter of federal law and their imposition violates the Supremacy Clause in Article VI of the United States Constitution.

**2.** The case was initially assigned to Senior Judge Dale E. Saffels but has since been transferred to the undersigned district judge.

5 The taxes imposed by the Act are invalid as a matter of federal law because the taxes are preempted by the Indian Trader Statutes, 25 U.S.C. §§ 261 to 264, and/or by Acts of Congress demonstrating Congressional intent to support and encourage Indian tribal self-determination and economic self-sufficiency.

6 The taxes imposed by the Act are invalid as a matter of federal law because the taxes infringe on the rights of tribal self-government of the plaintiff Tribes and violate the Tribes' inherent sovereign rights to make their own laws.

7 The taxes imposed by the Act are invalid as a matter of federal law because the tax scheme impermissibly burdens HCI, the Kansas Tribes, and members of the Kansas Tribes who purchase the fuel at retail because there is no mechanism for ensuring that members of the Kansas Tribes who purchase the fuel at retail shall not be required to pay Kansas fuel taxes on their purchases.

8 The taxes imposed by the Act unlawfully interfere with commerce between and among federally recognized Indian tribal governments and, therefore the taxes violate the Indian Commerce Clause of the United States Constitution.

9 Winnebago Tribe, HCI, and plaintiffs Blackhawk, Lance Morgan, Erin Morgan, and Earlene Hradec are entitled to sovereign immunity, and thus, the foregoing plaintiffs are entitled to a declaration that the State of Kansas' attempt to enforce the Act with respect to past or future seizures of property owned by plaintiffs would constitute an act in excess of the State's authority.

10 Plaintiffs Winnebago Tribe, HCI, Chairman Blackhawk, Lance Morgan, Erin Morgan, Earlene Hradec are entitled to a declaration pursuant to 28 U.S.C. § 2201 that the civil and criminal proceedings against them based upon the Act are precluded by sovereign immunity.

11 The tribal plaintiffs have not surrendered, by treaty, their inherent right to trade directly with other Indian Nations, and thus defendants' attempt to interfere with such retained rights unlawfully interferes with the federally protected right of Indian Tribes to trade with other Indian Tribes without interference.

12 Plaintiff Kickpoo Tribe explicitly reserved its right to trade with other Indian Tribes without interference from any of the State governments in the Treaty of Greenville, 1795, Art. 8, and defendants' interference with such rights violates the Treaty of Greenville.

13 By seizing tribal property, defendants have violated specific provisions of the Kansas Enabling Act.

14 Withdrawn pursuant to Amended Complaint. [The counts were not renumbered.]

15 In the initial Complaint, plaintiffs allege that defendants have deprived plaintiffs Winnebago Tribe and HCI of their clearly established rights under the color of state law in violation of 42 U.S.C. § 1983. The Amended Complaint alleges that, in conducting an investigation and planning, approving, filing, obtaining, and enforcing arrest and seizure affidavits, the arrest and seizure warrants and the criminal complaint, defendants Stovall, Richards, Maxwell, Lochow and Scott have deprived plaintiffs Winnebago Tribe, HCI, Blackhawk, and Lance Morgan's

clearly established federal rights including: (a) the right to be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments; (b) the right to due process under the Fourteenth Amendment; and (c) the right to trade with other Indian nations pursuant to the Indian Commerce Clause and the Indian Trader Statutes, under the color of state law in violation of 42 U.S.C. § 1983.

16 In the initial Complaint, plaintiffs allege that defendants, by issuing an Order for Jeopardy Assessment and an Agent Tax Warrant permitting collection of motor fuel taxes from plaintiffs Blackhawk, Lance Morgan, Erin Morgan and Earlene Hradec, without prior notice and an opportunity to be heard, violated their right to due process under the Fourteenth Amendment. In the Amended Complaint, plaintiffs alleged that, in planning, approving, issuing and enforcing the Order for Jeopardy Assessment and Agent Tax Warrant authorizing collection of the motor fuel tax for plaintiffs Winnebago Tribe, HCI, Blackhawk, Lance Morgan, Erin Morgan and Earlene Hradec, defendants Richards, Lochow, Scott, Stovall and Maxwell deprived the aforementioned plaintiffs' clearly established federal rights including, (a) the right to due process guaranteed under the Fourteenth Amendment; and (b) plaintiffs HCI and Winnebago Tribe's right to trade with other Indian nations secured by the Indian Trader Statutes and the Indian Commerce Clause.

17 Plaintiffs Blackhawk, Erin Morgan, and Earlene Hradec are entitled to a declaration that they cannot be held liable for HCI's failure to collect or pay the assessed taxes within the meaning of Kansas Statutes Annotated § 79–3464d.

18 Defendants' attempt to enforce the Act has created an entitlement amongst the plaintiffs to injunctive relief pursuant to Federal Rule of Civil Procedure 65 and 42 U.S.C. § 1983.

19 Plaintiffs are entitled to attorney's fees in prosecuting their claim against the defendants pursuant to 42 U.S.C. § 1988.

**B. Motion to Amend**

█ The motion to amend adds some plaintiffs, dismisses Count 15 of the original complaint, takes account of some intervening changes in Kansas government, and modifies the plaintiffs' claims under 42 U.S.C. § 1983. Although some of the proposed changes to the complaint appear unobjectionable, the court will deny leave to amend because the core of the proposed amendments is contrary to the recent decision of the United States Supreme Court in *Inyo County v. Paiute–Shoshone Indians of the Bishop Community of the Bishop Colony,* 538 U.S. 701, 123 S.Ct. 1887, 155 L.Ed.2d 933 (2003).

The plaintiffs' attempts to distinguish their new proposed claims from *Inyo County* are unpersuasive. In that case the Court held that an Indian Tribe is not a "person" entitled to bring a claim under § 1983. Plaintiffs correctly note that the Court did not base its analysis on a simple definition of the word "person," but upon the legislative context in which the term appears. 538 U.S. at ——, 123 S.Ct. at 1893, 155 L.Ed.2d at 942 (citing *Pfizer Inc. v. Government of India,* 434 U.S. 308, 98 S.Ct. 584, 54 L.Ed.2d 563 (1978); *Georgia v. Evans,* 316 U.S. 159, 62 S.Ct. 972, 86 L.Ed. 1346 (1942)). But the plaintiffs err in attempting to distinguish their proposed claims from those barred by *Inyo County.*

Section 1983 was "designed to secure private rights against government encroachment." *Inyo County*, 538 U.S. at ——, 123 S.Ct. at 1894, 155 L.Ed.2d at 943. Although the plaintiffs seek to characterize their proposed claims as an attempt to vindicate private rights, each of the claims advanced by the plaintiffs ultimately invokes the Tribes' unique sovereign status. As such, their motor fuel importation and distributorship business is not substantively different from the Indian gaming operation in *Inyo County*. In both cases, tribal plaintiffs brought legal claims on behalf of affiliated business entities, but the underlying claims invoked their sovereign rights under federal law.

Nor can the ruling in *Inyo County* be circumvented by the expediency of simply naming HCI or the individuals plaintiffs Blackhawk and Morgan. As plaintiffs conceded, Blackhawk and Morgan have no independent ownership interest in the property seized by the state; they are tribal officers and members attempting to obtain immunity from state laws based upon the sovereign status of the tribe. And HCI is an entity wholly owned by the Tribe. It has no claim, "like other private persons," for immunity from state revenue and criminal proceedings; its claim for sovereign immunity is wholly derivative from its owner, Ho–Chuck, Inc, its owner in turn, the tribe.

## C. Motions to Dismiss

The defendants seek dismissal on multiple grounds. They contend that the action should be dismissed because the action (1) is barred by the Eleventh Amendment; (2) is barred by the Tax Injunction Act; (3) is barred by principles of comity; (4) is subject to the doctrine of abstention; (5) fails to state a claim on the merits; (6) does not present actionable claims under § 1983; (6) is precluded by sovereign immunity;

(7) is precluded by the HaydenCartwright Act; (8) should be dismissed in part for lack of service or process and failure to name the real party in interest.

All defendants seek dismissal of plaintiffs' claims pursuant to one or more subsections of Rule 12 of the Federal Rule of Civil Procedure. In ruling on a motion to dismiss, the court accepts the truthfulness of all well-pleaded facts in the plaintiff's complaint and views both the facts and all reasonable inferences in the light most favorable to the plaintiff. *Housing Authority of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir.1991); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The pleadings are construed liberally. *Gas–A–Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102, 1107 (10th Cir.1973).

The issue in reviewing the sufficiency of a complaint is not whether the plaintiff ultimately will prevail, but whether the plaintiff shall be allowed to offer evidence to bolster the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The court may not dismiss a case for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *See also Jacobs, Visconsi & Jacobs Co. v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir.1991). In a Rule 12(b)(1) motion, the court may consider documents and other information submitted to the court in addition to the plaintiff's complaint. *Armstrong v. Goldblatt Tool Co.*, 609 F.Supp. 736, 737 (D.Kan.1985).

Federal courts are courts of limited jurisdiction and may exercise jurisdiction only when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir.1994). "A court lacking jurisdic-

tion must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F.Supp. 279, 280 (D.Kan. 1995) (citing *Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)); Fed.R.Civ.P. 12(h)(3). The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper. *Id.* When federal jurisdiction is challenged, the plaintiff bears the burden of showing why the case should not be dismissed. *Jensen v. Johnson County Youth Baseball*, 838 F.Supp. 1437, 1439–40 (D.Kan.1993).

■ Turning first to the Eleventh Amendment, the court finds no basis therein for dismissing the present action. Plaintiffs bring the action pursuant to 28 U.S.C. § 1362,[3] which grants district courts original jurisdiction over civil actions brought by federally-recognized Indian Tribes, where the matter in controversy arises under the Constitution, laws or treaties of the United States.

In rejecting the appeal from the award of the preliminary injunction, the Court of Appeals noted that the defendants had failed to initially assert any Eleventh Amendment defense. *Winnebago Tribe v. Stovall*, 341 F.3d 1202, 1206–07 (10th Cir. 2003). However, the court further found that "[e]ven had these claims been properly raised, Eleventh Amendment immunity would not be available to the state in this case." *Id.* at 1207.

In reaching this conclusion, the court noted its earlier decision in *Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566 (10th Cir.2000). In that case the Tenth Circuit, *following Moe v. Confederated*

*Salish & Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), held that the Eleventh Amendment did not bar a claim brought by Indian tribes under 28 U.S.C. § 1362 seeking to enjoin the State of Kansas from collecting motor vehicle fuel taxes.

Judge Robinson recently reached a similar conclusion in *Prairie Band Potawatomi Nation v. Richards*, 241 F.Supp.2d 1295 (D.Kan.2003). Rejecting a similar defense by the State of Kansas in that case (involving the taxation of motor vehicle fuel sold at a tribal store near a tribe-owned casino), the court there wrote that "[a]s instructed by the Tenth Circuit in *Sac and Fox*, this Court has jurisdiction and the Eleventh Amendment does not bar the Tribe's claim brought pursuant to § 1362." 241 F.Supp.2d at 1301.

■ The defendants next contend that the present action is barred by the Tax Injunction Act, 28 U.S.C. § 1341. The Act provides that, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such state."

However, despite this restriction, the Supreme Court has ruled that the Tax Injunction Act does not bar suits brought by Indian Tribes pursuant to § 1362 to enjoin the application of a state tax. *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). *See also Sac & Fox Nation of Missouri v. Pierce*, 213 F.3d 566, 571–73 (10th Cir.2000). In *Moe*, the court ruled that 28 U.S.C. § 1362, which allows tribes to initiate litigation that could have been brought by the United States as

---

**3.** Plaintiffs also assert that this court has jurisdiction pursuant to 28 U.S.C. § 1331 and

28 U.S.C. § 1367(a).

Trustee in federal court, essentially overrides the jurisdictional limitations of the Tax Injunction Act. Applying *Moe*, the Ninth Circuit has simply stated: "the barrier posed by 28 U.S.C. § 1341 to suits in federal court challenging the assessment, levy or collection of State taxes does not apply to actions commenced by an Indian Tribe." *Gila River Indian Community v. Waddell*, 967 F.2d 1404, 1407 (9th Cir. 1992). Thus, pursuant to *Moe*, the tribal plaintiffs in this case have the right to seek injunctive relief from state taxation in federal court. *Moe*, 425 U.S. at 470–75, 96 S.Ct. 1634 (quoting *Department of Employment v. United States*, 385 U.S. 355, 358, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966)).

The court finds that *Moe* is determinative as to this issue in reference to the claims of Winnebago Tribe, HCI[4] and the Kansas Tribes. However, the court finds that the Tax Injunction Act does serve to bar the individual claims brought by Blackhawk, Hradec, Erin Morgan and Lance Morgan. Pursuant to the decision of the Tenth Circuit in *Brooks v. Nance*, 801 F.2d 1237 (10th Cir.1986), the individual plaintiffs are barred by the Tax Injunction Act from seeking relief from the obligation of state tax. In *Brooks*, the plaintiffs, two Native American brothers and owners of a smoke shop, brought a 42 U.S.C. § 1983 action contending their civil rights were violated when state officials seized untaxed cigarettes for forfeiture. The court ruled that the TIA's bar on subject matter jurisdiction extended to civil rights actions, stating: "Basing a complaint upon alleged violation of civil rights, 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 or of the Federal Constitution will not avoid the prohibition contained in Section 1341." *Brooks*, 801 F.2d at 1239 (quoting *Hickmann v. Wujick*, 488 F.2d 875, 876 (2d Cir.1973)).

Other circuits have also held that the federal courts are without jurisdiction to hear cases brought by individual Indians which challenge state tax laws. *See Osceola v. Florida Dept. of Revenue*, 893 F.2d 1231 (11th Cir.1990) (holding that "only an Indian tribe or a governing body duly recognized by the Secretary of the Interior, can rely on section 1362 to defeat the jurisdictional bar of 28 U.S.C. § 1341."). The court finds no basis for distinguishing these decisions. To the extent that the individual plaintiffs would seek to challenge application of the Kansas motor vehicle fuel tax, the Tax Injunction Act requires that challenge to be conducted in state court. The actions of the individual plaintiffs will be dismissed.

Defendants additionally contend, with respect to the Tax Injunction Act, that it nonetheless bars the present claims to the extent that they relate to off-reservation activity. Without deciding whether the tax occurs on or off the reservation, the court finds this issue is not determinative of whether the TIA prohibits this action. There is no authority for defendants' contention. The case cited by defendants, *Gila River Indian Community v. Henningson, Durham & Richardson*, 626 F.2d

---

4. As the court stated in its order granting plaintiffs' motion for preliminary injunction, HCI shares Winnebago Tribe's tribal status because it is owned by the tribe. *Winnebago Tribe*, 216 F.Supp.2d at 1236 n. 9 (citing *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 157, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973)). The cases cited by defendant for support of its proposition that HCI should be dismissed because of the TIA, involve entities owned by private Indians, not the tribally owned entities. Defendants' citation to *Navajo Tribal Utility Authority v. Arizona Dept. of Revenue*, 608 F.2d 1228, 1231 (9th Cir.1979) is equally misplaced. In that case, the court ruled that a semi-autonomous tribal entity did not share the benefits of § 1362 with the tribe. Central to the court's decision, however, was that the tribe was not joined as a co-plaintiff.

708 (9th Cir.1980), stands for the proposition that jurisdiction under 28 U.S.C. § 1362 may only be extended when the tribe brings federal claims, not state law claims. Further, the court notes that neither the Tenth Circuit's decision in *Sac and Fox*, nor the Supreme Court's decision in *Moe* was dependant upon the taxable event occurring on the reservation. For purposes of defendants' motion to dismiss, it is sufficient that plaintiffs have alleged that the incidence of the tax falls on either the Winnebago Tribe or the Kansas Tribes. Whether or not the tax occurs on or off the reservation need not be decided at this juncture.

Further, the court finds that the Tax Injunction Act does not bar the claims of the Tribes or HCI under Counts 1, 16, or 17 to the extent that they advance state law questions and "non-Indian" law federal questions. The court has supplemental jurisdiction over plaintiffs' state law claims [5] pursuant to 28 U.S.C. § 1367(a).[6]

■ Turning to defendants' comity argument, the court finds that principles of comity do not support dismissal of the present action. The Supreme Court has held that " 'even where the Tax Injunction Act would not bar federal-court interference in state tax administration, principles of federal equity may nevertheless counsel the withholding of relief.' " *Brooks v. Nance*, 801 F.2d at 1241 (quoting *Rosewell v. LaSalle National Bank*, 450 U.S. 503,

525–26 n. 33, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981)). However, the court is not persuaded that the present case presents a situation wherein the court should, based on principles of comity, refuse to exercise its jurisdiction. Once again, there is a long line of cases wherein the federal courts exercise jurisdiction over tax disputes arising between tribes and states. The court sees no reason to depart from this accepted practice.

■ The court also finds no merit in defendants' arguments that the court should abstain from considering the present action. The court previously addressed, and rejected, defendants' abstention argument in resolving the motion for preliminary injunction. *See Winnebago Tribe of Nebraska v. Stovall*, 216 F.Supp.2d 1226, 1238–39 (D.Kan.2002) for its position on this matter. Defendants make no argument that would persuade the court to alter the position taken in its previous order. The decision of the court with respect to abstention under the doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), was upheld by the Tenth Circuit in its consideration of the appeal from the preliminary injunction. 341 F.3d at 1205.

■ Nor is there a sufficient basis for abstention under the *Pullman* doctrine. As announced in *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643,

---

**5.** The court questions whether plaintiffs actually make state law claims in Count 1 of the complaint. Count 1 of plaintiffs' complaint alleges that defendants' interpretation of the fuel tax statute renders it constitutionally unsound because it results in the incidence of the fuel tax falling on a tribe. Further, it has already been determined by the Tenth Circuit and the Supreme Court that it is the province of the federal courts to determine the legal incidence of a state tax.

**6.** Defendants' arguments urging this court to decline supplemental jurisdiction because the state law claims are not "so related" to the federal claims so as to "form part of the same case or controversy" or that the state claims raise "novel or complex issues of State law" are not persuasive. Determination of the legal incidence of the tax is within the court's province, regardless of how complex the analysis might be. In addition, resolution of the state claims regarding interpretation of the Kansas motor fuel tax is central to the resolution of plaintiffs' federal claims.

85 L.Ed. 971 (1941), when a state law is being challenged in federal court as contrary to the federal Constitution and there are questions of state law which may be dispositive of the case, the court should ordinarily abstain from deciding the case and allow the state court to decide the state law issue.[7] Abstention is only proper however, when the state law question is susceptible to an interpretation by the state court that would avoid or modify the necessity of reaching the federal constitutional question. *Martin–Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 563 (6th Cir. 1982). Further, the *Pullman* doctrine is only relevant when the plaintiff's claim in federal court is based on an alleged constitutional violation, not when the claim is based on a violation of a federal statute. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

The unsettled question of state law presented in this case is whether HCI is a distributor of first receipt as defined by the Act, and thus ultimately responsible for the fuel tax. Plaintiffs argue that the fuel tax statute cannot be read to render HCI a distributor of first receipt thereby making the Kansas Tribes distributors of receipt and responsible for the fuel tax. In either event, argue plaintiffs, the tax is invalid because it is imposed on Indians for commerce conducted on reservation land. Despite this unsettled question of state law, plaintiffs contend that because their claims are based on federal preemption and other non-constitutional federal issues, abstention is not warranted. In support of their position, plaintiffs cite *Federal Home*

*Loan Bank Bd. v. Empie*, 778 F.2d 1447, 1451 n. 4 (10th Cir.1985), where the court held that preemption questions are not "the type of constitutional issues that the *Pullman* abstention doctrine counsels courts to avoid."

Plaintiffs are correct in their assertion that abstention is usually not appropriate where, as here, plaintiffs challenge a state statute on the basis that it is preempted by federal law. *See United Services Auto. Assn. v. Muir*, 792 F.2d 356, 363–64 (3d Cir.1986). Most of plaintiffs' claims are based on preemption and are therefore inappropriate for *Pullman* abstention.

In addition, if the Kansas courts determine that HCI is not a distributor of first receipt and therefore the Kansas Tribes are, this court would still be faced with a preemption question as it applies to the Kansas Tribes. It would not be a prudent use of judicial resources to abstain and await the Kansas court's interpretation of the fuel tax which may prove to be preempted by federal law and therefore unenforceable. *Fleet Bank v. Burke*, 990 F.Supp. 50, 53 (D.Conn.1997). Plaintiffs' claims of constitutional violations are also inappropriate for *Pullman* abstention because the state law issues present in this case are not amenable to interpretation which may obviate need for this court's ruling.

The court now must turn to the issue of sovereign immunity. Counts 9 and 10 of plaintiffs' complaint allege that defendants are powerless to enforce the Act against them due to tribal and official sovereign immunity. The Winnebago Tribe argues

---

7. The factors the court should consider when deciding whether to postpone exercising jurisdiction are: (1) whether an uncertain issue of state law underlies the constitutional claim; (2) the state law issues are amenable to interpretation and such an interpretation may obviate or substantially narrow the need for a

federal court ruling on the constitutional issue; and (3) incorrect decision of state law by the district court would hinder important state law policies. *See Lehman v. City of Louisville,* 967 F.2d 1474, 1478 (10th Cir. 1992) (citing *Vinyard v. King,* 655 F.2d 1016, 1018 (10th Cir.1981)).

that Indian tribes retain sovereign immunity from suit absent either an explicit waiver of immunity or express authorization of the suit by Congress. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The individual plaintiffs argue that they are entitled to sovereign and official immunity because at all times they were tribal officials acting within the scope of their official duties. *See Fletcher v. United States*, 116 F.3d 1315, 1324 (10th Cir.1997) (noting that tribal sovereign immunity extends to tribal officials against claims for activities undertaken in their official capacity).

■ The defendants argue that the Tribe is not entitled to sovereign immunity because the state has not taken action against the Tribe; it has only taken action against HCI and its directors. The court rejects this contention, and finds there is no support for defendants' position. *See Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 157 n. 13, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973) ("[T]he question of tax immunity cannot be made to turn on the particular form in which the Tribe chooses to conduct its business"); *Barker v. Menominee Nation Casino*, 897 F.Supp. 389, 393 (E.D.Wis.1995)(holding that an action against a tribal enterprise is an action against the tribe itself).

Defendants next contend that the individual plaintiffs cannot commit the crime of tax evasion against the state and then argue sovereign immunity. Defendants' argument is faulty in that it presupposes that the plaintiffs are responsible for the fuel tax and have therefore committed tax evasion.

Finally, defendants allege that plaintiff HCI waived its right to sovereign immunity when it submitted an "Application for Motor Fuel and Special Fuel Importer/Exporter License." The application, signed by plaintiff Lance Morgan, states the applicant (HCI) "gives it irrevocable consent that actions may be commenced against it in the proper court of any county in this state in which a cause of action may arise or in which the plaintiff may reside ...." Plaintiffs argue that Lance Morgan did not have authority to waive HCI's immunity and therefore the consent is invalid.

■ "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106, (1978). Thus, suits against Indian tribes are barred "absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Comm. v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). A waiver of sovereign immunity " 'cannot be implied but must be unequivocally expressed.' " *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). Further, for a waiver of sovereign immunity to be effective, the waiver must be in compliance with the tribal law. *See World Touch Gaming v. Massena Management, LLC*, 117 F.Supp.2d 271, 275 (N.D.N.Y.2000) (holding that waiver of tribal sovereign immunity is invalid when contrary to the Tribe's constitution and Civil Judicial Code, the Tribal Council did not authorize the manager to waive sovereign immunity).

■ In this case, plaintiffs have asserted that Lance Morgan had no authority to waive tribal sovereign immunity when he signed the application for an importer/ exporter license. HCI's articles of incorporation provide that its sovereign immunity is effective unless consent is explicit, in writing, and "specifically approved by the board of directors of the corporation...."

There is nothing to indicate that the board of directors approved Lance Morgan's purported waiver of tribal immunity. For the purpose of defendants' motion to dismiss, the court views the facts in the plaintiffs' complaint in the light most favorable to the plaintiff, and finds that plaintiffs have stated a claim as to whether they are entitled to sovereign immunity.

 Next, defendants argue that the plaintiffs have failed to state a claim because the Hayden–Cartwright Act, 4 U.S.C. § 104, expressly cedes tax jurisdiction to the states on fuel delivered to Indian reservations. In pertinent part § 104(a) of the Act states:

> All tax levied by any State, Territory, or the District of Columbia upon, with respect to, or measured by, sales purchases, storage, or use of gasoline or other motor vehicle fuels may be levied, in the same manner and to the same extent, with respect to such fuels when sold by or through post exchanges, ship stores, ship service stores, commissaries, filling stations, licensed traders, and other similar agencies, located on United States military *or other reservations,* when such fuels are not for the exclusive use of the United States. Such taxes, so levied, shall be paid to the proper taxing authorities of the State ... within whose borders the reservation may be located.[8]

The court finds that defendants' argument provides no justification for dismissal of the present action. The defendants in *Prairie Band of Potawatomi* make a similar argument with respect to the Hayden–Cartwright Act. After extensively reviewing the ambiguous meaning and legislative history of the Act, Judge Robinson concluded that it did not bar the Tribe's claims. The court wrote:

Interpreting ambiguities in the Act in favor of the Tribe, the Court finds that the language of the Act does not show that Congress consented to taxation of the Indian reservations. The Court is further not persuaded by defendant's arguments relating to the legislative history or subsequent agency interpretation of the Act. Because Congress must be explicit if it intends to grant states the power to tax within Indian country, and because the Court finds Hayden–Cartwright does not provide for an explicit grant of Congressional authority for state taxation of motor fuel delivered to Indian reservations, defendant's request for summary judgment on this issue is denied.

241 F.Supp.2d at 1307. The analysis of the Act in *Prairie Band of Potawatomi* is well-reasoned and persuasive, and is adopted here. The court holds that the Hayden–Cartwright Act does not bar plaintiffs' claims for relief.

In addition to the foregoing arguments, defendants advance several subsidiary arguments. Defendants Lochow and Scott assert that they have not been properly served and therefore must be dismissed as parties to this lawsuit. In particular, defendants Lochow and Scott argue that service was executed upon Debra Main, a secretary at the Secretary of Revenue's office. Proper service may be accomplished by either serving the individual personally, delivering a copy to his or her home or delivering a copy to an authorized agent. *See* Fed.R.Civ.P. 4(e); Kan. Stat. Ann. § 60–304(a). Defendants Lochow and Scott assert that they have not authorized Ms. Main to be their agent for service of process. However, plaintiffs have reserved defendants Lochow and Scott personally. The court finds no evidence of any prejudice to either defendant from any

---

8. (Emphasis added).

delay in achieving proper service. Defendants' motion to dismiss shall be denied.

■ Defendants also argue that the plaintiff Winnebago Tribe is not the real party of interest because the actions taken by defendants were directed toward HCI and its directors. The court is not persuaded by defendants' arguments. Winnebago Tribe has alleged that defendants' actions have harmed its right to self-government (Count 6), its right to trade with other Indian Nations (Counts 3 and 8) and its rights procured by treaty (Count 11). The fact that Winnebago Tribe chooses to conduct its business through an organized corporation does not preclude it from joining the law suit. Therefore, defendants' motion to dismiss shall be denied as to this issue.

The critical question left for the court is whether defendants have established that plaintiffs' claims are legally inadequate at their core: whether plaintiffs can show that the state's taxation is preempted by either federal law or by tribal rights to self-government. *See Prairie Band of Potawatomi*, 241 F.Supp.2d at 1307–11.

The court has previously noted the well-reasoned nature of Judge Robinson's decision with respect to the Hayden–Cartwright Act, and the court finds the decision with respect to preemption and tribal government to be similarly persuasive. In that case, as here, the court was presented with a challenge by an Indian tribe to the State of Kansas's attempt to collect motor vehicle fuel tax. The court there granted summary judgment in favor of the state Department of Revenue.

However, adopting the reasoning of that decision, the court finds that the present matter cannot be resolved now, prior to further discovery and the ability to test the factual issues by summary judgment pleading.

As the court notes in *Prairie Band of Potawatomi*, the issues of preemption and tribal self-government revolve around the balancing of the tribal and state interests. This is a fact-intensive question, and cannot be resolved under the current state of the pleadings.

Plaintiffs assert that they manufacture motor vehicle fuel by importing the fuel to a facility at the reservation, adding some ingredients, and then selling the fuel to other tribes on the reservation. But the record is devoid of any specific information as to where the fuel is ultimately purchased, and whether it is purchased by Indians or non-Indians.

Included in the relevant factors in deciding whether the economic activity is subject to state taxation include whether the product for sale is non-Indian. Here, what is the economic importance of the fuel "additives?" Do the additives supplied by plaintiff HCI contribute meaningfully to the value of the ultimate product in the eyes of the consumer? Is the fuel subsequently marketed, and purchased, with the additive element playing any substantial element, or is it relatively unimportant from an economic standpoint? Do the additives play any substantial role in HCI's profits? To what extent do the ultimate purchasers of the product use tribal or reservation services?

Because there are so many unresolved fact questions, the court cannot conduct the sort of balancing required under the law. Accordingly, the court will deny defendants' motions to dismiss, and will revisit the issue, if necessary, at the summary judgment stage. At the same time, the court can then address any remaining issues (for example, the issue of whether HCI is a "distributor" which also involves dispute fact questions) not addressed in the present order.

In conjunction with the United States Magistrate Judge, the court will make arrangements for a scheduling conference within the immediate future to update existing pretrial deadlines and ensure the present matter proceeds to its resolution expeditiously.

IT IS ACCORDINGLY ORDERED this 15th day of January, 2004, that plaintiffs' Motion for Leave (Dkt. No. 114) is denied; the defendants' Motions to Dismiss (Dkt. Nos. 57, 70) are hereby granted in part and denied in part, as provided herein.